[Cite as *State v. Gilbert*, 2018-Ohio-3789.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 106358

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAURICE GILBERT

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-06-487765-B

**BEFORE:** Boyle, J., McCormack, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 20, 2018

**[Cite as *State v. Gilbert*, 2018-Ohio-3789.]**
**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender
BY:   Paul Kuzmins
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Frank Romeo Zeleznikar
          John R. Kosko
Assistant County Prosecutors
Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Laurice Gilbert, appeals the trial court's denial of his motion for a new trial. He raises three assignments of error for our review:

1. The trial court erred and denied Mr. Gilbert his right to due process under the law and his right to confrontation when Mr. Gilbert was excluded from the courtroom for a portion of the motion hearing.

2. The appellant was denied the effective assistance of counsel when he was excluded for a portion of the motion hearing and denied an opportunity to communicate with counsel and participate in the prosecution of his own motion.

3. The trial court abused its discretion in denying Mr. Gilbert's motion for a new trial after finding that all of the factors listed in *State v. Petro*, infra, were fulfilled.

{¶2} Finding no merit to his assignments of error, we affirm.

## I. Procedural History and Factual Background

{¶3} On October 26, 2006, a Cuyahoga County Grand Jury indicted Gilbert for two counts of aggravated murder and two counts of aggravated robbery, each with one- and three-year firearm specifications. As we previously explained in our decision considering Gilbert's direct appeal, *State v. Gilbert*, 8th Dist. Cuyahoga No. 90615, 2009-Ohio-463,

[t]he case proceeded to a jury trial, and Gilbert was found guilty on all counts. The trial court sentenced Gilbert to concurrent sentences of thirty years to life imprisonment on each of the aggravated murder counts, and eight years imprisonment on each of the aggravated robbery counts. The court also imposed three-year terms for the firearm specifications that merged and were to run consecutive to the base counts. Gilbert received a total aggregate sentence of thirty-three years to life.

The charges stemmed from an incident that occurred on October 11, 2006. On that date, Dontay Minor, the victim, was shot to death while visiting an apartment in Cleveland. The apartment was the home of Davita Moton, who lived there with her five-year-old son and her boyfriend, Alan Davis.

That morning, the victim arrived at the apartment and was playing video games with Davis. Moton was also home, but her son was at school. Gilbert arrived a little while later. All of the individuals present were friends.

That afternoon, Moton left the apartment to get her son from school. Gilbert also left to pick up another friend, Jamie Byrd. Gilbert eventually returned to Moton's apartment with Byrd. On the way, Gilbert told Byrd that he had to go and pick up his money.

When Gilbert and Byrd arrived at the apartment, Davis and the victim were present. Byrd began playing a video game, and Gilbert was having a conversation with the victim.

Davis testified that he heard Gilbert say to the victim "cause I need that" and "you can't leave me f****d up like that," and that Gilbert kept saying "just give me my s***." Davis heard the victim say that he didn't have anything and observed the victim take off his shoes and empty his pockets to display that nothing was in them. Davis then heard the victim say, "I see you got your little gun. I don't know if you gonna shoot me or pistol-whip me or whatever you gonna do." When Davis turned to look, he saw that Gilbert was brandishing a gun in the victim's direction. Davis ran to the porch and heard gunshots.

Byrd testified that he was playing a video game, that Gilbert and the victim were having a conversation, that he heard gunshots, that he ran to the porch with Davis, and that he heard more shots. After hearing the door open and close, Byrd ran out of the apartment.

Davis testified that he saw the victim dragging himself out of the back room and that he, Davis, called 911. Davis testified that he sat with the victim as other people started coming into the apartment. One of the persons who arrived was Carlos Jackson. Davis testified that Carlos Jackson was not previously in the apartment and that he was just looking.

The victim suffered multiple gunshot wounds and died on the scene. He was found to have approximately $2,000 in cash in the seat of his boxer shorts.

Approximately two hours after the shooting, Gilbert purchased a one-way ticket to Los Angeles. He was apprehended in Los Angeles approximately six months later. * * * Testimony was also presented that Davis and Jackson were not considered suspects, but that Gilbert and Byrd were considered possible suspects in the case.

*Id.* at ¶ 2-12.

{¶4} In his direct appeal, Gilbert appealed his conviction and sentence. *See id.* After reviewing the record and assignments of error, we affirmed in part, reversed in part, and remanded the case for further proceedings. *Id.* at ¶ 1. Specifically, we reversed Gilbert's convictions for aggravated robbery in violation of R.C. 2911.01(A)(3) and the related specifications because the indictment and jury instructions lacked the necessary mens rea. *Id.* at ¶ 40. We also reversed Gilbert's sentence because we found that his convictions for aggravated murder were allied offenses of similar import and should have merged for purposes of sentencing. *Id.* at ¶ 83. We thus remanded the case back to the trial court, which vacated Gilbert's conviction under R.C. 2911.01(A)(3) and merged his convictions for aggravated murder on August 30, 2010.

{¶5} In March 2009, Gilbert filed a delayed petition to vacate or set aside his sentence. The state filed a motion for summary judgment on petition for postconviction relief, and the trial court granted the state's motion.

{¶6} In November 2009, Gilbert filed a notice of appeal, contesting the trial court's judgment denying his "Delayed Petition to Vacate or Set Aside Sentence." We

affirmed the trial court's decision in *State v. Gilbert*, 8th Dist. Cuyahoga No. 94252, 2010-Ohio-6157.

{¶7} Gilbert filed another notice of appeal in December 2010, this time contesting the trial court's judgment overruling his motion to proceed to final judgment. This court dismissed his appeal sua sponte, finding that it was res judicata.

{¶8} In July 2016, the trial court granted Gilbert's motion for leave to file a motion for new trial, the motion now at issue. Gilbert filed his motion for a new trial on July 8, 2016, and the state filed a brief in opposition. Gilbert's motion was based on newly discovered evidence — namely, Byrd's and Davis's new assertions that they lied at Gilbert's trial and that Gilbert did not shoot Minor. Instead, Byrd and Davis identified the shooter as Curtis Ogletree, who lived in the same neighborhood, had a reputation for violence, and had a large family who also had a reputation for violence. Byrd and Davis claimed that they lied at Gilbert's trial because they were afraid of Ogletree and the possibility of him retaliating against them and their families.

{¶9} The trial court held a hearing on Gilbert's motion that lasted four days over a seven-month period. During the hearing, Byrd, Davis, Gilbert, Moton, Detective Diaz, and Gilbert's private investigator, Keith King, testified.

{¶10} During the hearing, the state asked the court to exclude Gilbert from the courtroom during Moton's testimony because Moton was "concerned about testifying in front of" Gilbert. Gilbert's counsel objected, citing Gilbert's Sixth Amendment right of confrontation. The following exchange occurred:

STATE: [T]he confrontation right is a trial right, not a post-conviction right. And as such, it wouldn't apply, the confrontation clause wouldn't apply to a motion for a new trial, which is a post-conviction hearing. So we would just ask this Court to allow the State to call a witness outside the presence of the defendant.

COURT: [Discusses the Ninth District's opinion in *State v. Cureton*, 9th Dist. Medina Nos. 03CA0009-M and 03CA0010-M, 2009-Ohio-6010 and the Seventh District's opinion in *State v. Irwin*, 184 Ohio App.3d 764, 2009-Ohio-5271, 922 N.E.2d 981 (7th Dist.).] It would appear that at least previous case law that I've been able to come up with supports the view that the defendant may be prevented from being present. I will note that he will be represented by counsel.

So while I adhere strongly to the Sixth Amendment right of confrontation in trial, I think in a proceeding of this type the law does permit, in extenuating circumstances, that that right may be abridged. Under the circumstances presented here and given the State's representation that the witness is unwilling to provide testimony in the presence of the defendant, I will abridge the right of confrontation, allow counsel to be present to do full cross-examination of the witness but will exclude the defendant himself.
So, [defense counsel], in the event of an unfavorable ruling, you've got a good issue for appeal.

{¶11} After the hearing, Gilbert and the state submitted closing argument briefs in support of their positions. On September 11, 2017, the trial court set forth findings of fact and conclusions of law in a detailed journal entry and overruled Gilbert's motion for a new trial in a separate journal entry, which Gilbert now appeals.

**II. Law and Analysis**

{¶12} In his first assignment of error, Gilbert argues that the trial court violated his constitutional rights — specifically, his confrontational rights under the Sixth

Amendment and his due process rights — when it excluded him from the courtroom during Moton's testimony. In support of his argument, Gilbert argues that "the trial court had a less severe remedy available and could have used closed-circuit television or physical screen or curtain as opposed to total exclusion and isolation."

{¶13} Gilbert was allowed to be physically present during most of the hearing on his motion for a new trial. He was only excluded from the courtroom during Moton's testimony, which, based on the four-page length of the transcript, lasted no more than a few minutes. While Gilbert himself was excluded, Gilbert's attorney remained in the courtroom and cross-examined Moton.

{¶14} "The United States Supreme Court has held that confrontational rights do not apply to all types of hearings. *Wolff v. McDonnell*, 418 U.S. 539, [94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)]. All that due process requires with respect to postconviction reports is giving the defendant a chance to rebut any alleged inaccuracies." *State v. Williams*, 23 Ohio St.3d 16, 23, 490 N.E.2d 906 (1986).

{¶15} Crim.R. 43(A) states

> Except as provided in Rule 10 of these rules and division (A)(2) of this rule, the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules.

{¶16} "The express language of Crim.R. 43[, however,] does not require defendant's presence at a hearing on a new trial motion. Further, the general rule is that the defendant's presence is not necessary at such a hearing." *State v. Padavick*, 8th Dist.

Cuyahoga No. 53343, 1988 Ohio App. LEXIS 528, 35 (Feb. 18, 1988); *see also State v. Irwin*, 184 Ohio App.3d 764, 2009-Ohio-5271, 922 N.E.2d 981, ¶ 71 (7th Dist.) ("Crim.R. 43 does not provide that a defendant has a right to be present at a motion for new trial hearing. * * * Thus, appellant had no right to be present at his new trial motion hearing."); *Cureton*, 9th Dist. Medina Nos. 03CA0009-M and 03CA0010-M, 2003-Ohio-6010, at ¶ 32 ("Cureton has presented no authority that states his right to confront witnesses extends to a Crim.R. 33 hearing on a motion for a new trial."); *State v. Prichard*, 1st Dist. Hamilton No. C-990148, 1999 Ohio App. LEXIS 5786, 11 (Nov. 26, 1999) ("Although Crim.R. 43 requires the defendant to be present at 'every stage of the trial,' it has been held that proceedings held in conjunction with a motion for a new trial do not constitute a stage of a trial.").

{¶17} Therefore, we overrule Gilbert's first assignment of error.

{¶18} In his second assignment of error, Gilbert argues that he was denied effective assistance of counsel when he was excluded from the courtroom because he was "denied an opportunity to communicate with counsel and participate in the prosecution of his own motion."

{¶19} The Sixth Amendment's right to counsel "extends to the first appeal of right, and no further." *Pennsylvania v. Finely*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *see also State v. Boles*, 12th Dist. Brown No. CA2016-07-014, 2017-Ohio-786, ¶ 31 (citing *Finley*); *State v. Waddy*, 10th Dist. Franklin No. 15AP-397, 2016-Ohio-4911, ¶ 42 (same); *State v. Clumm*, 4th Dist. Athens No. 08CA32,

2010-Ohio-342, ¶ 10 (same). It does not extend to "collateral attacks upon [a defendant's] conviction[.]" *Id.* A defendant cannot "be deprived of the effective assistance of counsel" when that defendant does not have a constitutional right to counsel. *Wainwright v. Torna*, 455 U.S. 586, 587-588, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982).

**{¶20}** Even though Gilbert retained his own attorney, Gilbert did not have a constitutional right to have an attorney assist him in pursuing a motion for a new trial. As a result, he cannot claim that he received ineffective assistance of counsel.

**{¶21}** Accordingly, we overrule his second assignment of error.

**{¶22}** In his third assignment of error, Gilbert argues that the trial court abused its discretion when it found that the *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), factors were fulfilled, yet denied his motion for a new trial.

**{¶23}** Crim.R. 33(A)(6) provides that "[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights":

> When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

**{¶24}** A Crim.R. 33(A)(6) motion for new trial on the ground of newly discovered evidence may be granted only if that evidence

(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*Petro* at the syllabus.

{¶25} By its terms, Crim.R. 33 does not require a hearing on a motion for a new trial. Thus, the decision to conduct a hearing is one that is entrusted to the discretion of the trial court. *State v. Smith*, 30 Ohio App.3d 138, 139, 506 N.E.2d 1205 (9th Dist.1986). The decision whether to grant a motion for a new trial also lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 76, 564 N.E.2d 54 (1990). Therefore, we will not reverse the trial court's decision unless we find it to be unreasonable, arbitrary, or unconscionable. *State v. Phillips*, 8th Dist. Cuyahoga No. 104810, 2017-Ohio-7164, ¶ 21.

{¶26} In denying Gilbert's motion for a new trial, the trial court set forth findings of fact and conclusions of law, which included the following analysis and application of the *Petro* factors:

> The recantation presented herein arguably meets all [the *Petro* factors]; nevertheless, upon full review and consideration of all the evidence before it, the court finds that the recantation of both Alan Davis and Jamie Byrd is not sufficiently credible to justify ordering a new trial. The court notes that testimony recanting earlier testimony is to be regarded as inherently unreliable. * * * Here, as noted, we have not merely one but two witnesses who both claim that they lied on the witness stand. Moreover, the court takes note of the fact that there was no forensic evidence, that the defendant's conviction was based solely upon the now-recanted testimony

of Alan Davis and Jamie Byrd, coupled with the defendant's flight immediately after the shooting. Moreover, the person both Davis and Byrd claim was the shooter, Curtis Ogletree, was himself murdered several years ago. Thus, the court must make its decision based upon the credibility of the witnesses' testimony at hearing, considered in the light of their testimony and all other testimony elicited both at trial and at the motion hearing.

Significant discrepancies that have not been adequately explained include the following:

(1) whether Jamie Byrd was in the living-room playing a video game (trial) or weighing drugs (hearing);

(2) whether Alan Davis told Davida Moton that Curtis Ogletree had shot Dontay Minor (Davis testimony) or never mentioned Ogletree to her (Moton testimony);

(3) whether the four were cooking drugs (Davis and Byrd testimony at hearing) or not (Davis statement to investigator Keith King, testimony of Det. Raymond Diaz). In this respect the court notes it was not until the present claim was asserted that any mention was made of either drug dealing or "cooking up" drugs for sale.

(4) whether Davis actually witnessed the incident (hearing testimony, at 11) or merely heard that Ogletree was the shooter (telephone conversation transcript, at 11).

(5) whether the defendant had previously planned to leave that day for Los Angeles (defendant's testimony, although uncorroborated by any other witnesses) or left immediately following the shooting in order to escape, thus supporting the presumption that flight indicates knowledge of guilt.

Under the circumstances presented the court is forced to conclude that the newly discovered evidence lacks credibility and thus is insufficient to warrant a new trial. Accordingly, the defendant's Motion for New Trial must be, and hereby is, OVERRULED.

Put simply, the trial court found that although Gilbert's "newly discovered evidence" — Davis's and Byrd's recantations — "arguably met" the *Petro* factors, it found that that evidence did not warrant a new trial because those recantations were not credible.

**{¶27}** Gilbert argues that because the trial court found that the *Petro* factors were satisfied, the trial court should have granted his motion for a new trial and left the credibility determinations to the jury. He argues that deciding whether Byrd's and Davis's recantations were true "should have been reserved for the finder of fact at the new trial."

**{¶28}** Foremost, witnesses' recantations of their trial testimony are "'looked upon with the utmost suspicion.'" *State v. Nunez*, 8th Dist. Cuyahoga No. 104917, 2017-Ohio-5581, ¶ 35, quoting *State v. Nash*, 8th Dist. Cuyahoga No. 87635, 2006-Ohio-5925. This is because "'the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times.'" *Id.*, quoting *State v. Gray*, 8th Dist. Cuyahoga No. 92646, 2010-Ohio-11. "Consequently, 'there must be some compelling reason to accept a recantation over testimony given at trial.'" *Id.*, quoting *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387.

**{¶29}** As a result, and contrary to Gilbert's argument,

> [W]hen a defendant seeks a new trial based upon a witness's recanted testimony, the trial court must evaluate the credibility of the recanting witness. *Toledo v. Easterling*, 26 Ohio App.3d 59, 60, 26 Ohio B. 223, 498 N.E.2d 198 (6th Dist.1985). The court must determine whether the recanting witness told the truth at trial or if the witness's recantation is true. *Id.* If the trial court determines the recantation is believable, the trial court must then determine whether the recanted testimony would have

materially affected the outcome of trial. *State v. Brown*, 186 Ohio App.3d 309, 2010-Ohio-405, 927 N.E.2d 113, ¶ 47 (7th Dist.).

*Id.* at ¶ 36; *see also State v. Bolan*, 8th Dist. Cuyahoga No. 95807, 2011-Ohio-4501, ¶ 55, quoting *State v. Braun*, 8th Dist. Cuyahoga No. 95271, 2011-Ohio-1688 ("'[B]efore a trial court may grant a motion for a new trial on the grounds that a witness has recanted his testimony, a trial court must determine whether the statements of the recanting witness are credible and true.'")

{¶30} Moreover, the trial judge that presided over Gilbert's trial also ruled on his motion for a new trial.

> "The trial judge is in a peculiarly advantageous position * * * to pass upon the showing made for a new trial. [The judge] has the benefit of observing the witnesses at the time of the trial, is able to appraise the variable weight to be given to their subsequent affidavits, and can often discern and assay the incidents, the influences, and the motives that prompted the recantation. [The judge] is, therefore, best qualified to determine what credence or consideration should be given to the retraction, and [the judge's] opinion is accordingly entitled to great weight. If the rule were otherwise, the right of new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court."

*Taylor v. Ross*, 150 Ohio St. 448, 452, 83 N.E.2d 222 (1948), quoting *State v. Wynn*, 178 Wash. 287, 34 P.2d 900 (1934).

{¶31} Accordingly, we — bound by the trial court's credibility determinations — find that the trial court did not abuse its discretion in overruling Gilbert's motion for a new trial and overrule his third assignment of error.

{¶32} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_

MARY J. BOYLE, JUDGE

TIM McCORMACK, P.J., and
EILEEN T. GALLAGHER, J., CONCUR