[Cite as *State v. White*, 2022-Ohio-2130.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110452 |
| v. | : | |
| TREAL WHITE, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 23, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-646377-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assisting Prosecuting Attorney, *for appellee.*

Robert A. Dixon, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Treal White ("White"), appeals his conviction following a bench trial. For the reasons set forth below, we affirm.

## Facts and Procedural History

{¶ 2} In December 2019, a grand jury indicted White on one count of aggravated murder, one count of murder, one count of attempted murder, two counts of felonious assault, and one count of discharge of a firearm on or near prohibited premises. All counts contained one-year and three-year firearm specifications. White elected to waive his right to a jury trial and a bench trial commenced on March 22, 2021, where the facts elicited are as follows.

{¶ 3} On September 21, 2019, White shot 25-year-old Tauvarsion "Shon" Waller ("Waller") five times with an AR-15 assault rifle, killing him. Further, Tyrone Laney ("Laney") sustained shots to the buttocks and hand during the shooting. White justified his actions by claiming he acted in self-defense.

{¶ 4} White, Waller, and several other friends were hanging out, drinking and smoking marijuana in a vacant lot on Alhambra in the city of Cleveland. The vacant lot was next door to the house where Alisha Ashford ("Ashford") was staying at the time. Although Ashford had concerns about the gathering of people next to her house, she described the group as laughing and having fun.

{¶ 5} According to White, things took a turn when someone who had stolen from him the week before showed up. Waller kept goading White to fight this person, to show he could stand up for himself. Nonetheless, White refused to fight. Waller punched White in the chest when he refused. According to White, this was the first time he and Waller fought in any way despite knowing each other since 2017. The punch knocked the wind out of White. White punched back once in

retaliation. Waller punched White again, then White backed away, saying he did not want to fight. Waller responded by punching White two more times before someone broke up the fight.

{¶ 6} Ashford heard a verbal confrontation between White and Waller about "slap-boxing." At that time, they were in front of her house, and she could see them outside of her front window. Ashford saw Waller start to walk away from White. As Waller was walking away, Ashford saw White go to the back of a nearby car, grab a gun, and start shooting at Waller. Once the shooting started, Ashford threw herself to the floor, presumably to avoid being in the line of fire. After things appeared to settle down, Ashford got up and saw Waller lying on the ground and saw a car drive over his body.

{¶ 7} White presented a different version of what occurred. According to White, he walked away from Waller intending to walk home. He saw a friend sitting in a parked car nearby and stopped to ask for a ride. It was at that point that he noticed Waller approaching him. Waller was about 10-12 feet away. White did not remember how it happened, but he grabbed an AR-15 that was in the back seat of the car and told Waller to back up. Waller was unarmed. According to White, Waller became mad when White pulled out the rifle and kept coming closer. White told Waller to back up and started backing up himself. Waller kept coming, and White fired the first shot toward Waller's leg. He shot two more times because Waller kept coming. White shot a fourth time and saw Waller's arm move. Finally, he shot Waller in the face because he felt he had to do it to stop Waller from advancing. At

some point, he realized that Laney was firing at him. White believed Laney fired about three times. White then took off running and ducked into a garage off Rudyard and Kipling. He eventually left the garage, leaving the AR-15 behind, and ran home.

{¶ 8} When police arrived on Alhambra, everyone had gone from the vacant lot except Laney who was seated beside Waller's body. Laney had sustained shots to his buttocks and hand. Police attempted to administer first aid until EMS arrived. Laney refused to give more than basic information and refused multiple requests to be interviewed.

{¶ 9} Five large caliber bullet casings were found on both sides of the street, in front of and near Ashford's home. All of the casings were fired from the AR-15. There was also evidence that another weapon had been fired. Waller was shot five times, in no particular order, once in the face, once in the chest, once in each arm, and once in one of his toes. Further, Waller had a tire mark on his left arm.

{¶ 10} It is unclear how White was identified as a suspect, but Ashford picked him out of a photo array shortly after the shooting. White was subsequently interviewed by police, where he denied being on Alhambra on the date of the shooting, and denied any knowledge of the shooting. However, DNA evidence collected from the AR-15 also linked White to the shooting.

{¶ 11} Approximately six months before trial, the state produced an expert report regarding trace evidence pursuant to discovery. Among other things, it addressed the expert's analysis of the muzzle-to-target distance involved in Waller's

shooting. The muzzle-to-target distance is a determination of the distance between the end of a firearm, i.e., the muzzle, to the target, which was Waller. The expert report concluded there was evidence that the shot to Waller's chest occurred at an intermediate muzzle-to-target distance. The report defined "intermediate" as suggesting "that the muzzle of the firearm was located between approximately 1 foot and approximately 5 feet from the target surface when the firearm was discharged." However, the report included a disclaimer indicating that the conclusions in the report were generalized to handguns.

{¶ 12} At the bench trial, the state's trace evidence witness testified in agreement with the trace evidence report that the evidence suggested an intermediate muzzle-to-target distance. Although not included in the report given in discovery, the expert opined that for a long gun, e.g., a rifle, like the one used in this case, he would estimate the distance to be around ten feet. White's counsel did not object to this testimony, nor did he cross-examine the witness.

{¶ 13} Subsequently, the state used the expert's testimony to challenge White's claim of self-defense. The state also highlighted the ten-foot distance in closing arguments.

{¶ 14} Ultimately, the trial court found that the state proved beyond a reasonable doubt that White did not use deadly force in self-defense. The court found White not guilty of aggravated murder but guilty of the lesser included offense of murder under R.C. 2903.02(A). The trial court also found White guilty of murder under R.C. 2903.02(B), two counts of felonious assault, and discharge of a firearm

on or near prohibited premises. The trial court found White guilty of all the associated one-year and three-year firearm specifications with each count as well. However, the trial court found White not guilty of the attempted murder charge and the specifications associated with that charge.

{¶ 15} On March 31, 2021, the trial court sentenced White to a total prison term of life imprisonment with the possibility of parole in 27 to 28.5 years.

{¶ 16} On April 13, 2021, White filed a motion for new trial. On April 23, 2021, while the motion for new trial was still pending, White filed a notice of appeal. On June 21, the trial court denied the motion for new trial.

{¶ 17} On December 10, 2021, White filed a motion for limited remand in this court in order to allow the trial court to appropriately address the motion for new trial, assuming the trial court did not have jurisdiction to rule. This court granted the motion. White's trial counsel moved for the appointment of new counsel. New counsel was appointed for White and a hearing was scheduled for January 20, 2022. However, at that hearing, White indicated that he had concerns about his appointed counsel's representation.[1] The trial court allowed appointed counsel to withdraw. The trial court then ruled on the motions filed by counsel. The trial court denied the motion for a new trial.

{¶ 18} White appeals and assigns the following errors for our review.

---

[1] White learned that one of the prosecutors who tried his case had quit the prosecutor's office and was sharing office space with his appointed counsel. Despite assurances that the two did not work together, White was uncomfortable with the arrangement and wanted new counsel.

## Assignment of Error No. 1

The defendant was denied due process of law and a fair trial due to violation of Crim.R. 16(K) by the state.

## Assignment of Error No. 2

The appellant was denied his Sixth Amendment right to effective assistance of counsel due to the action or inaction of counsel below.

## Assignment of Error No. 3

The lower court erred and abused its discretion in overruling the defense motion for new trial.

## Assignment of Error No. 4

The verdict and judgment below must be vacated due to prosecutorial misconduct violation of Mr. White's rights pursuant to the Sixth Amendment to the Constitution of the United States.

## Assignment of Error No. 5

The verdict and judgment below finding the appellant guilty of murder pursuant to R.C. 2903.02(B) was based on legally insufficient evidence.

## Assignment of Error No. 6

The verdict and judgment below finding the appellant guilty of murder pursuant to R.C. 2903.02(B) was against the manifest weight of the evidence.

## Law and Analysis

{¶ 19} For ease of analysis, we will address the assignments of error out of order.

Sufficiency of the Evidence

{¶ 20} In the fifth assignment of error, White argues that his conviction for murder pursuant to R.C. 2903.02(B) was based on insufficient evidence.

Specifically, White challenges the trial court's finding that the state proved beyond a reasonable doubt that White did not use deadly force in self-defense.

{¶ 21} "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production." *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins,* 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). Sufficiency of the evidence involves a review of the evidence admitted at trial and a determination of "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Goins*, 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, ¶ 13, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We must determine, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* The question is not "'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *Id.*, quoting *Thompkins* at 390.

{¶ 22} In order for the appellant to be convicted of murder under R.C. 2903.02(B), the state had to prove beyond a reasonable doubt that White caused the death of Waller as a proximate result of committing or attempting to commit an offense of violence that was a felony of the first or second degree. R.C. 2903.02(B).[2]

---

[2] R.C. 2903.02(B) provides that no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of

{¶ 23} However, under R.C. 2901.05, a person is permitted to act in self-defense. *State v. Jackson*, 8th Dist. Cuyahoga No. 108493, 2020-Ohio-1606, ¶ 16, citing R.C. 2901.05(B)(1). Essentially, if any evidence is presented at trial that tends to support that the defendant used force in self-defense, the state must prove beyond a reasonable doubt that the accused did not use that force in self-defense. *Id.,* citing R.C. 2901.05(B)(1).

{¶ 24} In order to demonstrate the inapplicability of self-defense, the state must prove beyond a reasonable doubt any one of the following,

> (1) that the defendant was at fault in creating the situation giving rise to the affray; (2) that the defendant lacked a bona fide belief that he was in imminent danger of death or great bodily harm or that another means of escape from such danger existed negating the need for the use of deadly force; *or* (3) that the defendant violated a duty to retreat or avoid the danger.

(Emphasis sic.) *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 14.

{¶ 25} Sufficiency is a test of adequacy. *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 38, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. When looking at the adequacy of the evidence to support a criminal conviction, we construe the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *Id.,* citing *Jenks*, 61 Ohio St.3d at 574, N.E.2d 492, paragraph two of the syllabus. In analyzing

---

violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

self-defense, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found * * * beyond a reasonable doubt'" that the defendant was *not* acting in self-defense. *State v. Vandergriff*, 1st Dist. Hamilton No. C-200282, 2021-Ohio-3230, ¶ 10, citing *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *Jenkins* at paragraph two of the syllabus.

{¶ 26} In the instant case, there was overwhelming evidence of White's guilt. It is undisputed that White shot Waller killing him, meeting the elements of R.C. 2903.02. In addition, Waller was unarmed when White shot him. Further, according to Ashford, White grabbed the rifle as Waller was walking away from him. That testimony, if believed, would prove that White was both at fault for creating the situation giving rise to the shooting and that he lacked a bona fide belief that he was in imminent danger of death or great bodily harm.

{¶ 27} Additionally, White's testimony disproved his self-defense claim. Even if White's testimony were believed and Waller was advancing on him, there was no evidence that placed White in fear of imminent danger of death or great bodily harm. According to White, he and Waller had been friends and never fought until the day of the shooting. If we believe White, Waller punched White because he felt that White should stand up for himself. At most, White painted a picture of someone who was trying to, although misguidedly, toughen him up, not someone intent on killing White. White's response to pick up an assault rifle and shoot the unarmed man five times far exceeded a defensive response to his perceived danger.

White's disproportionate use of force belied his claim of self-defense. Given the foregoing, there was sufficient evidence in the record, that if believed by the trier of fact, supported a finding that White did not act in self-defense and supported a finding of guilt on the murder charge beyond a reasonable doubt.

{¶ 28} Accordingly, we overrule the fifth assignment of error.

Weight of the Evidence

{¶ 29} In the sixth assignment of error, White argues that his conviction for murder under R.C. 2903.02(B) was not supported by the greater weight of the evidence. Again, White argues that the trial court's finding that the state proved he did not act in self-defense was not supported by the greater weight of the evidence.

{¶ 30} "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Weight of the evidence relates to "'the evidence's effect of inducing belief.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all of the evidence in the record, the reasonable inferences to made from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice * * *.'" *Id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Furthermore, in examining the manifest weight of the evidence, "the weight to be given the evidence and the credibility of the witnesses

are primarily for the finder of fact." *State v. Metz*, 2019-Ohio-4054, 146 N.E.3d 1190, ¶ 70 (8th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact may "'believe or disbelieve any witness or accept part of what a witness says and reject the rest.'" *Id.*, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "'[A]n appellate court may not substitute its own judgment for that of the finder of fact.'" *Harris* at ¶ 33, quoting *State v. Maldonado*, 8th Dist. Cuyahoga No. 108907, 2020-Ohio-5616, ¶ 40, citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶ 31} Clearly, White shot Waller and killed him meeting the elements of R.C. 2903.02(B). The only question is whether he did so in self-defense. White argues that other than the trace evidence expert's testimony, there was no credible evidence to refute his self-defense argument. We disagree.

{¶ 32} Again, the evidence establishes that Waller was unarmed when White shot him five times with an assault rifle. Even if Waller was advancing on White when he was shot, the evidence established that at most, Waller intended to finish the earlier fight, not that Waller intended to kill him or do great bodily harm. Further, Ashford's testimony placed the rifle in White's hand as Waller was walking away.

{¶ 33} The trial court's decision finding that the state disproved self-defense was supported by the greater weight of the evidence. As such, the guilty finding for murder was also supported by the greater weight of the evidence.

{¶ 34} Accordingly, we overrule the sixth assignment of error.

Crim.R. 16(K) Violation

{¶ 35} In the first assignment of error, White argues that he was denied due process and the right to a fair trial when the state violated Crim.R. 16(K). Specifically, White takes issue with the state expert's testimony that the muzzle-to-target distance was at least ten feet. White argues that the admission of that testimony violated the rule and allowed the state to introduce evidence that did irreparable harm to White's self-defense claim. While we agree with White that the state's actions violated Crim.R. 16(K), we find that White has failed to establish that he was prejudiced by the admission.

{¶ 36} As a preliminary matter we note that White did not object to the state's expert testimony. "The failure to object to trial testimony forfeits all but plain error." *Awan*, 22 Ohio St.3d at 120, 489 N.E.2d 277, ¶ 20, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23.

{¶ 37} Under Crim.R. 52(B), we may notice plain errors affecting substantial rights, even though those errors were not brought to the attention of the trial court. "To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial." *State v. Pratts*, 8th Dist. Cuyahoga No. 104235, 2016-Ohio-8053, ¶ 34, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). A defendant is entitled to a plain error finding where it is established that but for the error, the outcome of the trial clearly would have been different. *State v. Johnson*, 8th Dist. Cuyahoga No. 99715, 2014-Ohio-2638, ¶ 94, citing *State v. Long*,

53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001). Even if the plain error standard is met, courts should only notice it "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long,* 53 Ohio St.2d at 91, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 38} In the instant case, the Supreme Court of Ohio has made clear that under Crim.R. 16(K) where an expert witness formulates opinions that the state intends to offer into evidence, those opinions must be set forth in the expert's report giving the defendant formal notice and the opportunity to seek other expert-opinion testimony on the issue. *State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 57.

{¶ 39} In the instant case, the state violated Crim.R. 16(K) by providing an expert report that did not include conclusions it intended to use at trial. The state witness' testimony that the evidence suggested a muzzle-to-target distance of up to ten feet was outside the scope of the report provided to the defense and thus was in violation of Crim.R. 16(K).

{¶ 40} Although the state argues that the testimony was hypothetical and therefore permitted, we disagree. The state treated this "hypothetical" as fact by repeatedly referencing it in the cross-examination of White to discredit his testimony:

> State: You will agree with me that despite your belief here that your life was in danger that the first time a shot was fired that night was when

you pulled up an AR-15 assault rifle and fired it at your good friend, * * * Waller, correct?

White: I was trying to get him to back off and he wouldn't. He kept coming. Evidence show that.

State: You indicated to this Court that he was within two or three feet of you, correct?

White: I said I didn't know the approximate feet. I said I believe. I don't know.

State: What if I told you that trace evidence says, and the coroner says —

White: Five feet.

State: — that the majority of those shots, all but one came from a distance greater than 10 feet, correct?

White: I don't — I don't think it said that. I remember them saying five.

State: No. They said with an assault rifle it would be up to 10 feet they would expect to see gun powder on the area where it happened. Do you remember that?

White: I don't remember, but, yeah.

State: So for four of those five shots you were at least 10 feet away from Shon Waller when you fired the gun, correct?

White: No. He was close to me. He wasn't no 10 feet away from me.

(Tr. 562-563.)

{¶ 41} The state further used the "hypothetical" distance in its closing argument, repeatedly asking the court to consider the ten-foot distance in determining whether White acted in self-defense.

{¶ 42} The penalty for a Crim.R. 16(K) violation is exclusion of the testimony at trial. Crim.R. 16(K) ("Failure to disclose the written report to opposing counsel

shall preclude the expert's testimony at trial."). *See also Boaston,* 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, at ¶ 59 (It was error to allow expert's testimony on subjects "not set forth in a written report prepared in compliance with Crim.R. 16(K)."). The admission of the testimony satisfied the requirement under plain error analysis that there be a violation of a legal rule. It was also "obvious" under the second requirement of plain error. *See Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (defining a "plain" error as one that is a clear violation under current law).

{¶ 43} The third prong focuses on whether the error affected a substantial right. In the context of a criminal trial, plain error that affects a substantial right is an error that affects the outcome of the trial. *Pratts*, 8th Dist. Cuyahoga No. 104235, 2016-Ohio-8053, at ¶ 34. The burden is therefore on the appellant to demonstrate that there was a reasonable probability that the error resulted in prejudice. *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

{¶ 44} White has not established a reasonable probability that the erroneous admission of evidence affected the result of the trial. Even if the expert testimony had been excluded, there was overwhelming evidence of White's guilt. Furthermore, the remaining evidence after we remove the expert's testimony disproved White's self-defense claim.

{¶ 45} Additionally, this was a bench trial. As such, a trial judge is presumed to know the law and to have applied it accordingly. *N. Olmsted v. Rock*, 8th Dist. Cuyahoga No. 105566, 2018-Ohio-1084, ¶ 18, citing *State v. Waters*, 8th Dist.

Cuyahoga No. 87431, 2006-Ohio-4895, ¶ 11, citing *State v. Eley*, 77 Ohio St.3d 174, 180-181, 672 N.E.2d 640 (1996).

{¶ 46} Moreover, there is evidence in the record that the trial court did not consider the expert's testimony. In the trial court's ruling on White's motion for new trial, the trial court noted that "even if a portion of [the trace evidence expert's] testimony was excluded it would not have changed the verdict in this case * * * due to the overwhelming evidence presented at trial." The presumption that a trial court only considered reliable, relevant, and competent evidence remains unless "it affirmatively appears to the contrary." *Waters* at ¶ 18, citing *State v. Richey*, 64 Ohio St.3d 353, 595 N.E.2d 915 (1992). Given the foregoing, we cannot say that the testimony affected the outcome of the trial.

{¶ 47} As there was overwhelming evidence of White's guilt and no evidence that the trial court considered improper evidence in making its decision, White has failed to establish plain error.

{¶ 48} Accordingly, we overrule the first assignment of error.

Prosecutorial Misconduct

{¶ 49} In the fourth assignment of error, White argues that the state committed prosecutorial misconduct that was a violation of his constitutional rights when it violated Crim.R. 16(K) and that violation requires this court to vacate his convictions. White's failure to object to the testimony, however, subjects this claim to plain error analysis. Failure to object to the admission of evidence at trial waives all but plain error. *State v. Chapman*, 8th Dist. Cuyahoga No. 107375, 2019-Ohio-

1452, at ¶ 20, citing *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 23.

{¶ 50} In the instant case White has failed to establish prosecutorial misconduct. When an allegation of prosecutorial misconduct relates to Crim.R. 16, reversible error is present "when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." *State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 45; citing *State v. Jackson,* 107 Ohio St.3d 53, 79, 2005-Ohio-5981, 836 N.E.2d 1173, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983).

{¶ 51} "'Willful' has been defined as 'intent, purpose or design to injure.'" *State v. Thomas*, 7th Dist. Belmont No. 17 BE 0028, 2018-Ohio-3768, ¶ 27, citing *State v. Litton*, 12th Dist. Preble No. CA2016-04-005, 2016-Ohio-7913, ¶ 11, quoting *State v. Bowshier*, 2d Dist. Clark No. 06-CA-41, 2007-Ohio-5364, ¶ 31. *See also Jackson* at ¶ 78-79 (conduct not willful where state thought evidence was irrelevant and therefore it was unnecessary to produce it to defense); *Parson* at 442 (conduct not willful where state's failure to produce evidence was negligent, the record did not reflect willful misconduct, further, prosecutorial misconduct not present since the defendant was not prejudiced by the admission of the testimony on rebuttal). Since defense counsel did not object to the admission of the testimony, the trial court did not have an opportunity to ascertain the reasons for the state's Crim.R. 16(K)

violation.[3]  Nevertheless, the overwhelming evidence of White's guilt precludes a finding of prejudice.  Furthermore, the trial court affirmatively stated that the verdict would have been the same without the testimony.  Therefore, White has failed to establish that he was prejudiced by the state's conduct.

{¶ 52} Accordingly, we overrule the fourth assignment of error.

Ineffective Assistance of Counsel

{¶ 53} In the second assignment of error White argues that he received ineffective assistance of counsel when his lawyer failed to object to the admission of the trace evidence expert's testimony.

{¶ 54} In order to establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient and fell below an objective standard of reasonableness and (2) that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the trial would have been different.  *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216, ¶ 28 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The defendant must satisfy both prongs of the test in order to prove ineffective assistance of counsel.  *Harris*, 8th Dist. Cuyahoga No. 109083, 2020-Ohio-4138, at ¶ 28, citing *Strickland* at 687.

{¶ 55} Under Ohio law, "every properly licensed attorney is presumed to be competent." *State v. Knight*, 8th Dist. Cuyahoga No. 109302, 2021-Ohio-3674, ¶ 47,

---

[3] In its brief here and in its response to White's allegation in his motion to new trial, the state argued the trace evidence report was sufficient because it concluded the muzzle-to-target distance was "intermediate."

citing *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, when "evaluating counsel's performance on a claim of ineffective assistance counsel, the court must give great deference to counsel's performance and 'indulge a strong presumption' that counsel's performance 'falls within the wide range of reasonable professional assistance.'" *Id.*, quoting *Strickland* at 689.

{¶ 56} In the instant case, White's trial counsel acknowledged that he did not object to the trace evidence expert's testimony, because he was surprised by it and not prepared to cross-examine the witness as a result. While there is evidence in the record that counsel should have been aware of the issues with the trace evidence report before trial, we need not determine the first prong, since White has failed to establish that he was prejudiced by counsel's performance. This case was tried to the bench, and the trial court specifically noted that its verdict was not based on the inadmissible evidence. Additionally, the trial court is presumed not to have been impacted by the admission of improper evidence or the prosecution's continued emphasis on it unless the record affirmatively demonstrates otherwise. *Rock*, 8th Dist. Cuyahoga No. 105566, 2018-Ohio-1084, at ¶ 18, citing *Waters*, 8th Dist. Cuyahoga No. 87431, 2006-Ohio-4895, at ¶ 11, citing *Eley*, 77 Ohio St.3d at 180-181, 672 N.E.2d 640.

{¶ 57} Based on the foregoing, White has failed to establish that he was prejudiced by his counsel's conduct. Therefore, White has failed to establish that he received ineffective assistance of counsel.

**{¶ 58}** Accordingly, we overrule the second assignment of error.

Motion for New Trial

**{¶ 59}** Finally, in his third assignment of error and in his supplemental brief, White argues that the trial court erred in denying his motion for new trial. Specifically, White argues that it was error for the trial court to deny his motion without a hearing and to proceed after his appointed counsel withdrew from the case. Further, White argues that the trial court did not give due consideration to the state's Crim.R. 16(K) violation.

**{¶ 60}** With respect to White's argument that the trial court was required to hold a hearing, we disagree. Courts have consistently found that the decision to hold a hearing on a motion for new trial lies within the discretion of the trial court. Furthermore, Crim.R. 33 does not mandate a hearing. *State v. Cannon*, 8th Dist. Cuyahoga No. 103298, 2016-Ohio-3173, ¶ 16, citing *State v. Smith*, 30 Ohio App.3d 138, 139, 506 N.E.2d 1205 (9th Dist.1986). In the instant case, the trial court elected to hold a hearing. However, when White requested new counsel, the trial court took into consideration the deadline set by this court to address White's motion and instead ruled on the briefs already filed. This decision was well within its discretion.

**{¶ 61}** White also argues that the trial court erred in considering the motions when White was no longer represented. However, the trial court did not have a hearing after counsel was excused. At no time was White without legal counsel during any significant stages of the proceedings. The court's decision was based upon the written motions. Moreover, White has not argued that the motion for new

trial was incomplete or deficient. White has not demonstrated that he was prejudiced by the trial court's decision to rule on the written motions submitted by counsel.

{¶ 62} The trial court, therefore, did not err in deciding the issue on the motions.

{¶ 63} White raised several issues in his motion for new trial below, however, he has limited his argument on appeal to whether the Crim.R. 16(K) violation and its effects on White's case warranted a new trial. The decision of whether or not to grant a motion for a new trial is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *State v. Gilbert*, 8th Dist. Cuyahoga No. 106358, 2018-Ohio-3789, ¶ 25, citing *State v. Schiebel*, 55 Ohio St.3d 71, 76, 564 N.E.2d 54 (1990). An "abuse of discretion" is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983) quoting *State v. Adams*, 62 Ohio St. 2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 64} In the instant case, White's request for a new trial falls under Crim.R. 33(A)(2) and (3), which state:

> (A)    Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * *
>
> (2)    Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
>
> (3)    Accident or surprise which ordinary prudence could not have guarded against; * * *.

{¶ 65} Under Crim.R. 33(A)(2) where misconduct is alleged, a court conducts a two-step inquiry. *State v. Heru*, 9th Dist. Summit No. 24756, 2010-Ohio-635, ¶ 2, citing *State v. Herb*, 167 Ohio App.3d 333, 2006-Ohio-2412, 855 N.E.2d 115, ¶ 6 (9th Dist.). First, did misconduct occur; second, did the misconduct "'materially prejudiced the defendant's substantial rights.'" *Id.*, quoting *Herb*. Again, we review the trial court's findings for an abuse of discretion and will not overturn a decision unless it is found. *Id.*, citing *Schiebel* at paragraph one of the syllabus.

{¶ 66} As previously noted, White has failed to establish prosecutorial misconduct, therefore we need not address the second prong of the test. White has therefore failed to establish that he was entitled to a new trial under Crim.R. 33(A)(2).

{¶ 67} White further alleges that he was blindsided due to the Crim.R. 16(K) violation and the admission of the trace evidence expert's testimony. Crim.R. 33(A)(3) permits a new trial on the grounds of "surprise which ordinary prudence could not have guarded against"; when that surprise materially affected the defendant's substantial rights. Crim.R. 33. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 82.

{¶ 68} However, courts have found that a trial court acts well within its discretion to deny a motion for new trial under Crim.R. 33(A)(3) where defense counsel fails to raise the issue of surprise during trial. *See State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, 787 N.E.2d 691, ¶ 52 (10th Dist.); *LaMar* at

¶ 82-83. Since there was no objection, the trial court did not abuse its discretion in denying the motion on this basis. Nonetheless, it has already been determined that White's substantial rights were not materially affected.

{¶ 69} Accordingly, we overrule the third assignment of error.

{¶ 70} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., CONCURS;
KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY